MELISSA HOLYOAK, First Assistant United States Attorney (#9832)
JOEY BLANCH, Assistant United States Attorney (# 16665)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone:  (801)524-5682

_____

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY DOMINIC BERLONI,<br><br>Defendant. | **UNITED STATES' POSITION REGARDING DETENTION**<br><br><br><br>Case No. 2:26-cr-00102 |

☐     The United States is not seeking detention.

☐     Detention is not at issue because this is an immigration reentry case where the defendant has opted to participate in the fast track program, which includes agreeing to detention for the pendency of this case.

☒     The United States moves for detention based on current information.  The United States' positions in this preliminary pleading could change after reviewing the Pretrial Report or learning of additional evidence.  The United States reserves the right to assert positions even if the boxes next to those positions are not checked below, raise additional arguments, and file additional pleadings in support of detention.  The United States' motion for detention is:

☒  Pursuant to 18 U.S.C. § 3142(f)(1) because defendant is charged with:

   ☒  **(A)** a crime of violence (*see* 18 U.S.C. § 3156(a)(4)), a violation of 18 U.S.C. § 1591 (sex trafficking of children), or an offense under § 2332b(g)(5)(B) (specific enumerated crimes) for which a maximum term of imprisonment of

10 years or more is prescribed; **or**

☐ **(B)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(C)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(D)** any felony if the defendant has been convicted of two or more offenses described in (a) through (c) above, or two or more State or local offenses that would have been offenses described in (a) through (c) above if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☒ **(E)** any felony that is not otherwise a crime of violence but involves: **(i)** a minor victim; **(ii)** the possession or use of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250;

**OR**

☐ Pursuant to 18 U.S.C. § 3142(f)(2) because the case involves:

☐ **(A)** a serious risk the defendant will flee; **or**

☐ **(B)** a serious risk the defendant will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, attempt to threaten, injure or intimidate a prospective witness or juror.

### Procedure

The defendant may seek a continuance of the detention hearing of up to five days, and the United States may seek a continuance of up to three days.  18 U.S.C. § 3142(f). During any such continuance, the defendant shall be detained.  *Id*.  The rules concerning the admissibility of evidence do not apply at the detention hearing.  *Id*.  The United States has the burden of persuasion by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community or by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. *Id*.; *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

**Rebuttable Presumption**

☒  A rebuttable presumption applies and the defendant bears the burden to produce some credible evidence to rebut this presumption.  The United States acknowledges that it retains the burden of persuasion.  The statutory presumption applies:

☐ Pursuant to 18 U.S.C. § 3142(e)(2) *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because:

**(A)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; *and*

**(B)** the defendant committed that offense while on release pending trial for a Federal, State, or local offense; *and*

**(C)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for that, whichever is later.

☒  Pursuant to 18 U.S.C. § 3142(e)(3) *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(A)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(B)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(C)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 or more is prescribed;

☐ **(D)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; *or*

☒ **(E)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

3

**Factors to Be Considered**

The United States may present arguments, proffer evidence, or provide testimony at the scheduled detention hearing supporting the detention of the defendant including, but not limited to:

☒  The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm or destructive device.  (18 U.S.C. § 3142(g)(1)).

☒  The weight of evidence against the defendant.  (18 U.S.C. § 3142(g)(2)).

☒  The history and characteristics of the defendant including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning court proceedings.  (18 U.S.C. § 3142(g)(3)(A)).

☐  Whether, at time of the current offense or arrest, the defendant was on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.  (18 U.S.C. § 3142(g)(3)(B)).

☒  The nature and seriousness of danger to any person or to the community that would be posed by the defendant's release.  (18 U.S.C. § 3142(g)(4)).

☐  The defendant's lack of legal status in the United States.  The defendant's legal status is: There is an order of removal pending against him.

☐  How the defendant would be subject to removal or deportation after serving a period of incarceration.

☐  The defendant's significant family or other ties outside of the United States.

☐  The defendant's use of aliases or false documents.

☐  The defendant's prior attempts to evade law enforcement.

☐  How the defendant's proposed residence, employment, or proposed treatment programs have not been verified.

☐  The defendant's prior failures to appear for court proceedings.

☒  Other reasons including:

On December 15, 2026, a law enforcement officer was using an online undercover profile containing terms that signal an interest in children or images of children.  Defendant contacted the UC with "Heya, Love your bio, Gotta have respect for [the coded term] haha."  This clearly indicates that defendant understood the meaning of the term and approved.  Defendant was using a social media profile with the name "Anthony" - his real name- and photograph.

Defendant asked if the UC had "anything to chat on" other than the online application on which they met. The UC suggested a couple of chat apps, and defendant sent the UC his contact information for one of

4

them.

The UC messaged defendant using that contact information – "this Anthony from [the initial meeting site]?"  Defendant responded "Yessir (: … NGL [not gonna lie], I saw you were close as hell and with the bio, I had to say hey :)."  The UC said "what all you into … if you know [the coded term], I think were def into the same stuff."  Defendant replied "Haha def, yeah so bestiality for sure.  Big one for me, boys, those are the big two."  Thus, defendant indicated a sexual interest in boys.  During the chat, defendant indicated that he had a sexual interest in young boys aged 4-12, but sometimes younger.  When asked if he had any age limits, defendant said "Not really I wasn't into super young, still not but [redacted] is an exception … I mean trust I cum to it, hard but it's just not always my thing!  But 4-12 are prime."  When discussing the "exception" to his 4-12-year-old preference, defendant referenced the name of a well-known child pornography producer who created and distributed many images of himself molesting a boy about 16 months old.  (The coded term in the UC's profile that defendant recognized referenced this same individual.)

The UC asked "b or g or both?"  Defendant responded that he was only into boys.  "Just b ya can't do the other never been my thing …  Same with dogs hahaha."  Defendant asked the UC "How about you," and the UC told him the UC was into "both for me, really anything but 7-12 is ideal range."  Defendant responded "okay love that … We should get together sometime (:."

On December 15th, 2025, the chat between Defendant and the UC continued.  Defendant and the UC discussed that the UC "played" with his 11-yo son (molested him) and the UC encouraged him to produce child pornography of the child.  Specifically, when told that the UC "played" with his son, defendant responded "Do you really?  That's awesome, you ever film it?"  The UC said no, because that was an easy way to get caught.  Defendant said "I mean fair but you just leave the faces out … I'm not saying you need to be the next [redacted] haha but …"  Again, defendant referred to the child pornography producer discussed above.  Defendant then talked about his sexual activity with a dogs.

On December 20, 2025, defendant reached out to the UC, "hey king how are you?"  Defendant said he was horny and wanted to know if the UC wanted some videos.  In the context of their previous chat, this refers to child pornography.  On December 21, 2025, the UC replied "sure man what you gotn."  Defendant said "I've got over 5K videos.  But rn I just traded for some really hot reaction vids."   In this context, reaction videos are videos of men who are sexually interested in children, watching child pornography and masturbating to it.  The child pornography they are watching is also depicted in the "reaction" video, on whatever screen the "reactor" is watching it on.  After the UC expressed an interest, defendant stopped chatting.  The UC did not reach out to him.

On February 9, 2026, defendant reached out to the UC again, out of the blue, asking if the UC wanted child pornography.  Defendant said, "Hey you … How are you? … Just curious if you wanted some vids."  The UC said "mmm yes please."  Defendant asked, "anything in particular?" and the UC said "I love it all so whatever."  Defendant asked, "Did I ever send you those reaction vids I can't remember, I've been cumming to those a bunch lately."  When the UC said "I dont think so I havent seen any reaction vids," defendant said, "Bet I got you king," and sent the UC 98 child pornography "reaction" videos.  He then said, "I've got thousands more so if you ever need more."  The UC said "dame dude nice where do you get all your stuff," and defendant answered, "just years of collecting tbh."  Defendant suggested they meet in person and masturbate together.

Examples of the child pornography "reaction videos" sent by defendant to the UC on February 9, 2026, include:

- A 30-second video depicting a white adult male, naked, with "I fuck kids" written across his chest in black pen. Behind the male is a TV, which is playing a child

> pornography video from the produce referred to in their previous chat.  It depicts an adult male anally sodomizing a prepubescent male approximately 1-3 years old.
>
> - A 35-second video depicting a white adult male masturbating to a child pornography video playing on a laptop between the male's legs. The child pornography he is masturbating to depicts a white adult male, entirely nude except for a black mask, lying on a bed with a prepubescent male approximately 6-8 years old. The child is also nude except for a blind fold. The adult sodomizes the child.
>
> - A 44-second video depicting a white adult male, nude, crouched on the floor by a laptop. The adult male is masturbating while the laptop plays a video of an adult male anally sodomizing an infant.

Several days later, the chat commenced again, and defendant against suggested they meet in person to masturbate "jerk off together."  There was some discussion about the logistics of meeting but then on February 24, defendant's account showed "deleted" and all communications ended.

Defendant was easily identified.  The social media account defendant initial used to contact the UC bore his actual first name and actual photograph.  In the chat, defendant said he lived in downtown Salt Lake; defendant does live in downtown Salt Lake.  The subscriber information for the chat application used by defendant included a phone number – belonging to defendant – and an IP address used to connect to the account.  This IP address resolved to defendant's apartment complex – the landlord provides Internet to the entire complex and the IP address simply resolves to the complex, not the individual apartment.  The manager of the apartment complex confirmed that defendant lived in that complex and had lived there since July 2025.  She also confirmed that his telephone number, listed on his lease, was the same as the subscriber telephone number on the chat app used by defendant to send child pornography to the UC.

On March 4, 20265, a search warrant was executed at defendant's apartment.  Defendant was present – he answered the door nude, with phone in hand.  While defendant made no statements, more than 4600 child pornography were found on external hard drives during an on-scene preview.  It appeared to be sorted into different folders by gender and age, but appeared to largely depict the sexual abuse of young boys.

Defendant made it very clear in the chat with the UC that he has a longstanding sexual interest in boys 4-12, and sometimes younger.  He admitted to spending years amassing a child pornography collection – some of which he shared with the UC.  While defendant did not admit to any hands-on offenses with children, he did indicate a willingness to act on his sexual desires by admitting to multiple instances of sexual activity with dogs.  Thousands of child pornography files have been found so far – files defendant has apparently watched and organized.  Nothing in defendant's behavior suggests that any conditions or combination of conditions of release would make him safe in the community, and he should be detained.


☐  The victim(s) in this matter seek(s) a no contact order.


//


6

☒  This matter does not involve a victim requiring notification; the case involved an undercover officer.

DATED this 10th day of April, 2026.

MELISSA HOLYOAK
FIRST ASSISTANT UNITED STATES ATTORNEY


_/S/ Joey Blanch_____
JOEY L. BLANCH
Assistant United States Attorney